

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GRANDANA, LLC; JIANPING
ZHU; and ARTFIELD, LLC d/b/a
REGENCY HOTEL                                      **PLAINTIFFS**

v.                                      CIVIL ACTION NO. 3:23cv380-KHJ-MTP

ARCH SPECIALTY
INSURANCE COMPANY                                  **DEFENDANT**

## COMPLAINT
**(Jury Trial Demanded)**

COME NOW, Plaintiffs Grandana, LLC; Jianping Zhu; and Arfield, LLC d/b/a Regency Hotel (collectively, "Plaintiffs"), and present their Complaint, as follows:

### I.

### PARTIES

1.1     Plaintiff Grandana, LLC ("Grandana") is a foreign limited liability company organized under the laws of California which is registered to conduct business in the state of Mississippi.

1.2     Plaintiff Jianping Zhu ("Zhu") is an adult resident citizen of California.

1.3     Artfield, LLC d/b/a Regency Hotel ("Regency" or "Regency Hotel") is a limited liability company organized under the laws of California doing business as Regency Hotel, which is registered to conduct business in the state of Mississippi with its principal address located at 400 Greymont Avenue, Jackson, Mississippi 39202.

1.4     Defendant Arch Specialty Insurance Company ("Arch") is an insurance company organized under the laws of Missouri with its principal place of business located at Harborside 3, 210 Hudson Street, Suite 300, Jersey City, New Jersey 07311, and process may be issued upon

the Mississippi Insurance Commissioner, or upon Arch's registered agent for service of process, which is United States Corporation Service Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110, or in any other manner allowed under the Mississippi Rules of Civil Procedure.

## II.

## JURISDICTION AND VENUE

2.1   This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because it involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000.

2.2   Venue is proper in the Southern District of Mississippi, Northern District, pursuant to 28 USC § 1391, because this case arises from breach of an insurance contract entered for the benefit of Plaintiffs, in part, to be performed in whole or in part in the Southern District of Mississippi, Northern District and because the loss at issue is located in the Southern District of Mississippi, Northern District.

## III.

## FACTS

3.1   Grandana and Zhu are engaged in a joint venture as owners of Regency Hotel, which is located at 400 Greymont Avenue, Jackson, Mississippi 39202 (the "Subject Property").

3.2   On July 29, 2021, Arch issued insurance policy No. ESP7300564-08 ("the Subject Policy") with coverage in the approximate amount of $11,500,000 to Plaintiffs which, at all times relevant, provided insurance coverage for, among other coverages, Structure, Personal Property, Debris Removal, Remediation, and Loss of Use for the Subject Property.

2

3.3     On March 18, 2022, substantial damage occurred to the Subject Property as a result of storm damage, which is listed by the Subject Property as a covered peril.

3.4     Thereafter, Plaintiffs promptly made a claim under the Subject Policy for all storm-related damage. The Arch claim number for Plaintiffs' claim is 000013772440 ("Subject Claim").

3.5     After Plaintiffs made their claim, Arch determined to send an adjuster and engineer to the Subject Property to perform a site inspection/investigation. Arch also informed Plaintiffs through its Third-Party Administrator ("TPA") that an estimate of the scope of the damage to the Subject Property was simultaneously being prepared.

3.6     On March 25, 2022, on behalf of Plaintiffs, a video of the collapse of the roof of the Subject Property was provided to Arch's TPA to clearly demonstrate the damage to the roof of the Subject Property as well as its cause. Also, offer was made to provide Arch with a video of water coming into the Subject Property to further demonstrate the scope and magnitude of the catastrophic damage to the Subject Property.

3.7     Plaintiffs thereafter waited for over two months without Defendant Arch taking efforts to properly adjust and pay the claim. Arch further failed in their contractual obligations by failing to timely provide for essential funding for the purpose of water remediation and protection of the Subject Property from further damage.

3.8     Arch knew or should have known of the scope and magnitude of the Subject Claim and that they possessed nearly complete control as well as the obligation to protect and act in the best interest of the insureds (Plaintiffs). Plaintiffs, including Plaintiff Zhu, are not experts in repair and remediation of a catastrophic loss to a hotel facility, nor did they have the financial means to do so, which is the reason they purchased insurance covering the Subject Property.

3

Plaintiffs paid premiums for their insurance coverage and were reliant on Arch to timely fulfill its obligations to respond in timely fashion in the event of a covered loss such as the one presently at issue.

3.9   Despite Arch's failures to expeditiously adjust and pay Plaintiffs' claim, Plaintiffs themselves immediately began working to make repairs to do everything within their ability to mitigate further damage to the Subject Property on their own.  Yet when Plaintiffs ultimately submitted invoicing to Arch through Arch's TPA for the work they performed from March 18, 2022, through April 22, 2022, Arch refused to pay (and still has not paid as of the present date) Plaintiffs for their work.

3.10   After waiting approximately 45 days for Arch to provide the rightful emergency benefits and assistance and otherwise timely adjust the loss at issue (which Arch indisputably owed under the Subject Policy), in addition to the self-help efforts immediately undertaken by Plaintiffs themselves from March 18 through April 18, Plaintiffs were required to try and seek help from other sources to fulfill the contractual obligations owed to them by Arch in May of 2022.  Plaintiffs were required to do so as a result of the failure by Arch to provide good faith assistance in the claims process, including taking immediate, timely action to protect Plaintiffs' interests as well as adjusting the loss.

3.11   Plaintiffs therefore contacted a repair company by the name of Restoremasters and a public adjusting agency by the name of Premier Claims, LLC in order to obtain assistance with the Subject Claim.  Plaintiffs retained Premier on or about May 4, 2022.

3.12   On May 10, 2022, Arch's TPA provided the following correspondence to Plaintiffs:

> We're finally expecting to receive the engineer's report and have forwarded that to the insurance company with a request for authority to share the report with you for review.
>
> We understand the main issue is the opening that remains on the roof above the service kitchen and the need for a temporary covering to redirect water from weather events to another area of the roof. We request that you continue your best efforts to redirect and mitigate additional damage to the building. I am working to secure additional direction on future activity from the insurer and hope to have that back to you in the next few days.

3.13    Finally, on May 30, 2022, Plaintiff Zhu was informed by Arch's TPA, which Arch retained to act as its agent on its behalf with respect to investigating and adjusting the Subject Claim, that an advance of $100,000 had been approved. Nevertheless, even had Arch transmitted the advance to Plaintiffs on the date of this notification (May 30, 2022), which did not occur, as explained below, the advance payment was grossly inadequate given the enormous scope of the storm damage to the Subject Property.

3.14    Due to the storm damage to the Subject Property and the delays in cleanup and repair caused by Arch, on or about June 24, 2022, Plaintiff Zhu received notification from the City of Jackson of potential violations in code compliance.

3.15    Despite the prior May 30 notification from the TPA retained by Arch that an advance had been approved, no funds were received by or on behalf of Plaintiffs until approximately June 29, 2022. Time was of the essence under the circumstances of the Subject Claim, and no arguable basis existed for delay in payment for over two months.

3.16    When a check for the advance of funds finally was mailed by Arch, the funds were sent to Premier rather than to Plaintiffs. Thereafter, on or about July 5, 2022, Restoremasters used a portion of the advance to access the Subject Property in order to place a tarpaulin on the roof.

5

3.17    Despite Plaintiffs' efforts to mitigate further damage, as detailed above, the Subject Property became further damaged by the water intrusion and resulting additional problems as a result of the grossly excessive delays by Arch which were without any arguable basis.

3.18    As of July 12, 2022, Arch's TPA corresponded with Premier informing of the determination that damage to the Gallery Rooms and Guest Rooms of the Subject Property had been moved to a separate claim purportedly due to findings by Arch's TPA that this damage was unrelated to the storm damage that occurred on March 18, 2022.  The TPA also informed Premier that Plaintiffs had been "advised of potential coverage issues for the damage in the Gallery Rooms and Guest Rooms due to evidence of long term water intrusion associated with maintenance on the roof."  While the TPA provided repair estimates for this damage, Arch did not provide any payment to Plaintiffs for these repairs.

3.19    Because of the excessive delays and the continued disrepair of the Subject Property, the City of Jackson took additional action against Plaintiff Zhu by issuing her multiple, additional citations due to continuing city code violations.  In or about early August, 2022, Plaintiffs became aware that the City of Jackson was taking action against Regency based on a code enforcement summons along with threats to close the hotel due to lack of repairs.

3.20    On August 3, 2022, Plaintiffs notified Arch's TPA of these actions by the City of Jackson and also put Arch on notice (through its TPA) that the necessary repairs required by the City could not be made due to Arch's failure and refusal to pay the Subject Claim.  Request also was made in writing to the TPA for a copy of all details related to all aspects of the claims made on Regency's behalf so that Plaintiffs could understand the scope of work and provide same to the City of Jackson in order to defend the hotel.  Regency made clear in writing to Arch through

6

its TPA that "[i]f the hotel is closed, it will be due to delays in repairs caused by delays in processing the claim."

3.21   Also on August 3, 2022, on behalf of Plaintiffs the following written notification was provided to Arch's TPA:

> The City of Jackson has brought a code enforcement suit against Regency. The hearing is next Tuesday. The City has threatened to close the hotel due to lack of sufficient repairs of damage for which Regency has received no insurance proceeds.
>
> On behalf of Regency I sent three letters and two emails to Premier Claims terminating the contract(s). I also sent an email to Robert Mirner with Arch Specialty Insurance on July 27, 2022 informing the carrier Regency terminated its contracts with Premier Claims, but I received no acknowledgment from Mr. Mirner or Arch.
>
> Regency is concerned further delay may cause the hotel closure.
>
> Please confirm Arch knows Regency has taken these steps.
>
> Please encourage Premier Claims to close its file and not interfere with Regency's relationship with Arch.
>
> Please send me copies of all claims made by Regency, so I can better understand the damages and use that information to show the City of Jackson Regency is working to resolve the damage and hopefully dissuade the city from closing the hotel.

3.22   Plaintiff Zhu received service of the citations on or about August 9, 2022, when the fire marshal for the City of Jackson visited the property, and September 15, 2022, respectively.

3.23   During the month of August, 2022, Arch took the position that nothing could be done on the Subject Claim supposedly because of seasonal rainfall. Nothing was done by Arch to assist Plaintiffs with the Subject Claim during the month of August, which further exacerbated the damage to the Subject Property.

7

3.24    On August 30, 2022, the TPA acting on behalf of Arch finally, for the first time, provided to Plaintiffs with the identity of "a contractor that [wa]s interested in evaluating the service kitchen roof collapse and related damage to provide a bid for repair." The TPA requested permission to conduct another site visit to the Subject Property along with the suggested contractor on September 1, 2022. On August 31, 2022, Plaintiff Zhu responded to the TPA's request in the affirmative, noting that she had been waiting for Arch – through its TPA – to take action.

3.25    On or about September 1, 2022, the TPA acting on behalf of Arch – along with the contractor referenced above – visited the Subject Property to perform a second site inspection/investigation.

3.26    On or about September 13, 2022, the fire marshal for the City of Jackson instructed Plaintiff Zhu to shut down all business operations of the hotel within 72 hours. This order temporarily was put on hold due to the fact that Plaintiff Zhu had never been arraigned or otherwise notified of a court date with regard to the city citations.

3.27    On September 14, 2022, the TPA acting on behalf of Arch notified Plaintiffs that the suggested contractor had completed their proposal for repair of the service kitchen roof and damage that resulted directly from the roof collapse and was ready to submit it to Plaintiffs directly for review. Yet no funds were dispersed to Plaintiffs.

3.28    On or about September 16, 2022, Plaintiffs retained a second new public adjusting company by the name of Velocity as part of their ongoing efforts to do what Arch should have done from the outset. By September 19, 2022, Velocity had already arranged for and, through the assistance of an environmental consulting firm, performed a 243-page comprehensive Water Mitigation Report, which was provided to Arch.

3.29   On September 29, 2022, the citations against Plaintiff Zhu were tried before the Municipal Court of Jackson, Mississippi. On September 30, 2022, the court issued its order and verdict against Plaintiff Zhu and issuing its verdict, as follows:

> The [Regency] Hotel must immediately cease renting rooms to new occupants upon issuance of this Order. No new residents or occupants may stay or otherwise occupy the Hotel. As of today, Defendant shall notify all current Hotel residents and occupants of this Order and direct all such residents and occupants to vacate the Hotel within seventy-two (72) hours (by October 3, 2022).
>
> Defendant has none hundred eighty (180) days (until March 29, 2023) to make all necessary repairs to bring the Hotel into compliance with all applicable City codes, to the reasonable satisfaction of the City.
>
> Alternatively, the Defendant has one hundred eighty (180) days to demolish the Hotel to the reasonable satisfaction of the City.
>
> Further, the City of Jackson's Fire Department is ordered to ascertain the source of the Hotel's gas leak and shut it off within 24 hours of receipt of this Order. The gas leak presents a clear and present danger to not only the Hotel occupants but also the neighboring buildings and people.

3.30   The court sentenced Plaintiff Zhu to imprisonment in the County jail for one hundred twenty (120) days, with the sentence suspended on the condition of compliance with the court's order. The court also set a secured Appearance Bond at <u>one million dollars ($1,000,000.00)</u>.

3.31   As of December of 2022, despite the passage of approximately 75 days since Plaintiffs provided Arch with the comprehensive Water Mitigation Report prepared by Velocity, whom Plaintiffs were required to retain on their own to try and satisfy the obligations that Arch owed to Plaintiffs, Arch continued without any arguable basis to stonewall and delay proper handling of the Subject Claim. No further payments were issued.

3.32   As a proximate result of all of the foregoing, on December 13, 2022, Plaintiffs Grandana and Zhu were served with a Complaint to Condemn filed by the Mississippi

9

Department of Finance and Administration ("MDFA") on behalf of the State of Mississippi. Within the Complaint, the MDFA seeks to condemn through establishment of a Special Court of Eminent Domain the tract of land on which the Subject Property is located.

3.33    Accordingly, based on the gross, reckless breaches by Arch, Plaintiffs are now faced with the reality of having the Subject Property, including the land on which it is situated, involuntarily taken from them by the MDFA. Further, based on the present state of the Subject Property and exacerbation of the damage due to Arch's failures, the present fair market value of the property is diminished, which – even if Plaintiff is required to sell the Subject Property to the State under the condemnation/eminent domain proceeding – materially impedes Plaintiffs' ability to negotiate a reasonable price for their property, which has thereby further damaged Plaintiffs significantly.

3.34    Plaintiffs' new public adjusting firm, Velocity, has been actively working on the Subject Claim to try and obtain the benefits rightfully owed (but by this point in time grossly delinquent) to Plaintiffs since March of 2022. Despite the best by Plaintiffs to cooperate with Arch and move the claims process forward expeditiously, it has become apparent that Arch, despite already causing Plaintiffs' present catastrophic circumstances, intends to further leverage Plaintiffs by continuing to slow-walk the Subject Claim. For example, Arch recently required Velocity, acting on behalf of Plaintiffs, to divide the Subject Claim into three separate claims and resubmit proofs of loss on that basis before even considering the claim.

3.35    As a result of the bad faith leveraging of Plaintiffs by Arch, Plaintiffs now face the imminent irreparable harm of a 120-day incarceration of Plaintiffs Zhu, the complete and permanent closure and loss of their hotel business, and financial ruin if this Court does not provide injunctive relief by ordering Arch to immediately and rightfully process, adjust, and pay

all aspects of the Subject Claim for which no good faith dispute over coverage exists. And Plaintiffs have been provided no information from Arch to date disputing coverage as to any portion of the Subject Claim.

3.36    Most recently, on or about April 29, 2023, acting in communication with Arch and its representatives, Velocity submitted a scope estimate for necessary repairs to the Subject Property. Velocity did so using the directions required by Arch and its TPA with respect to the form of the claim. In response, on May 10, 2023, Arch denied the claim, stating that "Arch cannot accept the POL as submitted." Arch further stated that "[i]t is Arch's current position that there is insufficient support for any additional payment under the Policy. Accordingly, Arch must reject the POL submitted on March 30, 2023." Therefore, after approximately 14 months since the storm damage occurred, Arch has taken the position that it owes no further benefits under the Policy for the storm damage at issue.

3.37    As a result of all of the foregoing, Plaintiffs are now in an emergency circumstance that is causing financial ruin to Plaintiffs, permanent closure of the hotel business, and will lead to incarceration of Plaintiff Zhu if immediate, emergency action is not taken to rightfully process, adjust, and pay the Subject Claim.

## IV.

## CAUSES OF ACTION

### Breach of Contract/Tortious Breach of Contract

4.1    Plaintiffs incorporate by reference the prior allegations as if set forth fully herein.

4.2    Plaintiffs and Arch entered into a contract for insurance coverage for the Subject Property. Pursuant to the Subject Policy, Plaintiffs paid Arch premiums every month for

insurance coverage on the Subject Property. A loss to the Subject Property occurred during the coverage period for the Subject Policy.

4.3     Arch has failed to timely discharge its duties to timely handle the Subject Claim and further failed to provide Plaintiffs with all rightful benefits owed to them under the Subject Policy and to competently and fully repair/replace the damage to the Subject Property. As a proximate result, Plaintiffs have suffered damages and continue to suffer damages.

4.4     Arch's misconduct and such breach has been with gross, reckless, and malicious disregard for the rights of Plaintiffs as amounting to a separate and independent tort resulting in damages to Plaintiffs and justifying an award of actual as well as punitive damages in favor of Plaintiffs.

### Breach of the Duty of Good Faith and Fair Dealing

4.5     Plaintiffs incorporate by reference the prior allegations as if set forth fully herein.

4.6     Such actions are breaches of contract and the implied covenant of good faith and fair dealing contained under the respective policies. Arch's conduct and such breach has been with gross, reckless, and malicious disregard for the rights of Plaintiffs, resulted in damages to Plaintiffs, and justifies an award of actual as well as punitive damages in favor of Plaintiffs.

### Bad Faith

4.7     Plaintiffs incorporate by reference the prior allegations as if set forth fully herein.

4.8     The actions attributable to Arch, as described above and incorporated herein, were committed without any arguable basis and with gross negligence, malice, and/or with intentional, willful, wanton, reckless and intentional disregard for the rights of Plaintiffs. Such actions include but are not limited to failing to timely and properly investigate and adjust the Subject

Claim, to timely remediate/repair the damages to the Subject Property, and failure to properly pay all amounts owed under the Subject Policy without any arguable basis.

4.9     Such actions were without justification or an arguable reason and were committed in bad faith. Consequently, Arch is liable to Plaintiffs for punitive damages. Arch handled the claim with intentional, willful, and reckless disregard for Plaintiffs' rights.

4.10    Further, upon Plaintiffs' submission of their proofs of loss related to the loss at issue in this action, Arch has failed to pay insurance benefits due and owing, and for which Arch does not deny that coverage exists, within the time requirements required by law.

## Negligence/Gross Negligence

4.11    Plaintiffs incorporate by reference the prior allegations as if set forth fully herein.

4.12    Arch failed to exercise the degree of care, skill, knowledge, and ability ordinarily possessed by members of its profession in performance of its respective duties owed to Plaintiffs. Arch's failure to exercise the care, skill, knowledge, and ability ordinarily exercised by members of its profession caused damage to Plaintiffs.

4.13    Further, Arch's actions in this matter constitutes gross negligence and reckless disregard for the rights and property of Plaintiffs. Arch's gross negligence and reckless disregard for the rights of Plaintiffs was the direct and proximate cause of damages sustained by Plaintiffs, as set forth in detail above. Arch knew or should have known that its gross negligence and reckless disregard for the rights of Plaintiffs would cause Plaintiffs to sustain damages in this case.

## Infliction of Emotional Distress

4.14    Plaintiffs incorporate by reference the prior allegations as if set forth fully herein.

4.15    As a direct and foreseeable consequence of the actions described above, Plaintiffs have suffered severe mental anguish and emotional distress. The actions of Arch were performed either intentionally in an effort to cause Plaintiffs to sustain and experience emotional distress and anguish, or their actions and/or omission were performed with gross negligence which resulted in mental and emotional distress and anguish being suffered by Plaintiffs. Plaintiffs' mental distress and anguish is a result of Arch's extreme and outrageous conduct.

## V.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request a jury trial. Plaintiffs respectfully request that upon the jury's determinations at the trial of this action, the Court enter judgment in their favor and against Arch as follows:

a.    Ordering Arch to pay actual and, where allowable by law, statutory damages, (including but not limited to punitive damages) and restitution to Plaintiffs, as allowable by law;

b.    Ordering Arch to pay both pre- and post-judgment interest on any amounts awarded;

c.    Ordering Arch to pay attorneys' fees and costs of litigation and suit;

d.    Ordering Arch to pay any and all other damaged pled herein that are allowable by controlling law; and

e.    Ordering such other and further relief as may be just and proper.

THIS, the ___ day of June, 2023.

Respectfully submitted,

_____
Michael A. Heilman
COUNSEL FOR PLAINTIFFS

OF COUNSEL:
Michael A. Heilman (MSB No. 2223)
John W. Nisbett (MSB No. 103120)
HEILMAN LAW GROUP, P.A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914-1025
Facsimile: (601) 944-2915
mheilman@heilmanlawgroup.com
jnisbett@heilmanlawgroup.com